UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARL FORGERON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROMARICK HOUGH, DIESEL | ) | Case No. 10 C 6298 |
| MANAGEMENT, INC., AUTO | ) | |
| RETRIEVAL INC., AVIS BUDGET | ) | Judge Joan B. Gottschall |
| CAR RENTAL GROUP, LLC, AVIS | ) | |
| RENT-A-CAR SYSTEM, LLC, and | ) | |
| AVIS BUDGET GROUP, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Karl Forgeron has filed suit against Romarick Hough, Diesel Management, Inc. ("DMI"), Auto Retrieval, Inc. ("ARI"), and Avis Budget Car Rental Group, LLC, Avis Rent-A-Car System, LLC, and Avis-Budget Group, Inc. (collectively, "Avis"), alleging that Avis or ARI violated the Fair Debt Collection Practices Act ("the FDCPA" or "the Act"), committed defamation *per se*, publicly disclosed private facts, and intentionally inflicted emotional distress. Forgeron also alleged that Hough and DMI made fraudulent misrepresentations and breached a contract with him. Both Avis and ARI have separately moved to dismiss the counts against them under Federal Rule of Civil Procedure 12(b)(6). As these defendants make almost identical arguments, the motions are addressed together. For the reasons stated below, the court dismisses the FDCPA claims and dismisses the remaining state law claims without prejudice.

# I. Background[1]

Forgeron worked as chiropractor at Barrington Orthopedic Specialists from June 2007 until March 2010. As a hobby, Forgeron wrote music and played a variety of instruments. In 2009, Forgeron reconnected with a prior acquaintance, Romarick Hough, who told Forgeron that he was working with prolific national music acts in his capacity as the owner of DMI. Hough also represented that DMI had a record distribution deal with Universal Records; as a result, he said he could help Forgeron get a major record label deal. Hough told Forgeron that DMI needed $85,000 to launch Forgeron's music career. According to Hough, this money would be used to record, produce, and engineer tracks for radio play, and to market Forgeron's music. Forgeron actually paid for six studio recording sessions; during these sessions, Hough pressed Forgeron for more funds to purchase certain so-called "royalty music codes." Hough apparently refused to give substantive information regarding these codes, but told Forgeron that he needed $3,500 in short order or else Forgeron's chances of getting radio airplay would be jeopardized. Forgeron took $5,000 from a retirement fund to cover the cost of the codes, a new wardrobe, and a photo shoot.

Avis and ARI come into the picture via a somewhat circuitous route. In February 2010, Hough told Forgeron that he needed an automobile to transport a well-known rap artist from the airport. Hough claimed not to have the necessary credit card, and requested that Forgeron allow him to use Forgeron's credit card in return for a cash payment. Forgeron agreed; in return, Hough paid Forgeron $580 in cash and promised to return the car by the conclusion of the weekend.

---

[1] As this is a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations in the complaint are taken as true; thus, the facts herein are those alleged by Forgeron unless otherwise noted.

Hough did not return the car at the agreed-upon time. After the due date for the car came and went, Avis (or ARI, on Avis's behalf) began calling Forgeron, attempting to ascertain the location of the car. Forgeron informed Avis that Hough had the car and that he did not know where Hough was located. Avis began charging Forgeron's credit card for the additional days that the car was missing. Someone informed Forgeron via telephone that a "bounty hunter" would be sent to retrieve the vehicle. Forgeron again responded that he was not in possession of the car and did not know where it was, but he suggested that Avis or ARI should contact the police.

In early or mid-March of 2010, Forgeron received a call from Dr. Flood, the managing physician at Forgeron's place of employment. Flood told Forgeron to report to Flood's office as soon as he arrived at work. As Forgeron was leaving his home, he saw that a sign had been posted on his front door; this sign "suggested that [Forgeron] was on the verge of being charged or had been charged with Grand Theft Auto." (*See* First Am. Compl. at 3.) That same sign apparently had been posted on the front door of his workplace; upon arriving there, Flood informed Forgeron that Flood had seen the sign and was "extremely upset." Forgeron tried to explain, but to no avail; in short order, other doctors ceased referring patients to Forgeron, and he lost his position at Barrington Orthopedic Specialists. Hough eventually returned the car, at which point Avis charged Forgeron's credit card for additional late fees and hundreds of dollars in damage.

Based on these incidents, Forgeron alleges that either Avis or ARI is liable for violating the FDCPA, for defamation, for publication of private facts, and for intentional infliction of emotional distress. In addition, he alleges fraudulent misrepresentation and breach of contract against Hough and DMI.

3

For their part, Avis and ARI[2] respond that they cannot be liable under the Act because (1) a rental vehicle is not a "debt," both because the vehicle is not "money" and because the vehicle was not rented "primarily for personal, family, or household purposes"; (2) neither Avis nor ARI are "debt collectors"; and (3) ARI did not breach the peace. Both further posit that they cannot be liable for defamation *per se* because Forgeron failed to identify the alleged defamatory statement with sufficient particularity. Accordingly, Avis moves in the alternative for a more definite statement. As to the publication of private facts, both Avis and ARI argue that their disclosure did not involve a private fact, nor was it "highly offensive" as required under Illinois law. Finally, they challenge Forgeron's intentional infliction of emotional distress ("IIED") claim, arguing that (1) none of the conduct alleged is sufficiently extreme or outrageous, (2) Forgeron failed to sufficiently allege severe emotional distress, and (3) because Avis had a legal right to repossess its vehicle, it cannot be held liable for IIED stemming from its behavior.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the defendant may seek to dismiss the case if the plaintiff "fail[s] to state a claim upon which relief can be granted." The court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). But although Federal Rule of Civil Procedure 8(a) only requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," nonetheless the complaint must include "more than labels and conclusions, and a formulaic recitation of

---

[2] Not all arguments are made by both Avis and ARI, but most are equally applicable. The court will only distinguish where this becomes relevant, such as where the allegations concern specific behavior by either Avis or ARI.

4

the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Id.*

### III. DISCUSSION

### A. FDCPA Counts

The FDCPA precludes debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A debt is defined in the Act as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Thus, to determine whether something qualifies as a "debt," the court undertakes a two-part inquiry: first, the court determines whether the obligation qualifies as that of a "consumer to pay money arising out of a transaction"; if so, then the court considers whether the "money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Berman v. GC Servs. Ltd.*, 146 F.3d 482, 484 (7th Cir. 1998). The Seventh Circuit has noted that this definition is quite broad: "As long as the transaction creates an obligation to pay, a debt is created." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325-26 (7th Cir. 1997).

By its own terms, the Act applies to "debt collectors," *i.e.*, those who engage in some affirmative conduct with respect to the debt collection. *McCready*, 453 F.3d at 888-89. The Act defines a debt collector as a person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A debt collector is distinct from a creditor, and "[c]reditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the Act." *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998).

As noted, Avis and ARI claim that (1) a rental vehicle is not a "debt" because it is not an obligation to "pay money arising out of a transaction"; (2) there is no "debt" because Forgeron's claim does not arise from an obligation incurred "primarily for personal, family or household purposes"; and (3) neither Avis nor ARI are "debt collectors" (albeit for different reasons). The court addresses each argument in turn.

1. <u>Obligation "To Pay Money Arising Out Of A Transaction"</u>

The court first considers the nature of the alleged debt. Although "not all obligations to pay are considered 'debts' under the Act," *Bass*, 111 F.3d at 1324, a debt includes any "obligation of a consumer to pay money arising out of a transaction"; that transaction may include "money, property, insurance, or services" (as long as they are "primarily for personal, family, or household purposes," a limitation discussed below). 15 U.S.C. § 1692a(5). As the term is defined as a consumer's obligation "to pay money," Avis argues that the FDCPA applies only to monetary debts, not vehicles. (*See* Avis's Mem. of Law in Supp., ECF No. 18, at 5-6.) Because Forgeron alleges that the debt at issue is the vehicle (*see* First Am. Compl. ¶¶ 72-73, 91, 95), Avis says that Forgeron's claim must fail.

If the conduct described in the complaint occurred as a result of Avis's or ARI's attempts to collect money—*e.g.*, the amount owed for the car rental period, or the amount

owed as a result of the alleged breach of the rental agreement or damage to the vehicle—Forgeron's obligation to pay clearly would satisfy the first prong of the "debt" inquiry. *See Yelin v. Swartz*, --- F. Supp. 2d ----, 2011 WL 1103450, at *3 (E.D. Pa. 2011) ("[U]nder the definition of 'debt' set forth in the FDCPA and clarified by the Third Circuit in *Pollice*, it is clear that Plaintiff is a consumer whose obligation arises out of a transaction (the rental agreement) in which the property or services (the use of the rental car) were primarily for personal purposes. Therefore, the Court finds that the money allegedly owed by Plaintiff to ECRI constitutes a 'debt' under the FDCPA, and denies Defendants' Motion to Dismiss this claim."); *see also Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492 (D. Md. 2004) (assuming without deciding that attempts to collect for damages caused to a rental vehicle could be actionable under the FDCPA); *McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2002) (same).

Avis argues that this case should be different, because Forgeron clearly ties his allegations to the repossession of a vehicle he never owned. While true, this fact does not change the root inquiry: did the car rental agreement, which is the underlying transaction at issue, oblige Forgeron to pay money? It did. The court can find no support for the notion of carving up the transaction—renting an automobile—into a "return the car" portion and a "pay the money" portion, and Avis has not cited any authority to support this type of divisibility. If anything, the Seventh Circuit's caselaw supports the idea that the relevant "transaction" (a term not defined in the FDCPA) is broad. *See, e.g.*, *Berman*, 146 F.3d at 486 (holding that the relevant transaction—hiring a nanny—obliged the employer to make unemployment insurance contributions, and therefore those contributions qualified as "obligation[s] of a consumer to pay money arising out of a

transaction"); *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997) (holding that the purchase of a home was the relevant transaction, and that the resulting obligation to pay condominium assessments was a "debt" under the FDCPA, "even if the timing and amount of particular assessments was yet to be determined" at the time of the home purchase); *Bass*, 111 F.3d at 1326-29 (holding that a payment obligation arising from a dishonored check was a "debt" under the FDCPA, but noting that the FDCPA limits its reach to those obligations to pay arising from consensual transactions, not those arising from theft).

Forgeron and Avis entered into a rental car agreement wherein Forgeron agreed to pay money in return for the temporary use of a vehicle. Thus, the underlying obligation by which Avis made claim to the vehicle arose from a transaction that required Forgeron to pay money. *See Perovich v. Humphrey*, No. 97 C 3209, 1997 WL 674975, at *2 (N.D. Ill. Oct. 28, 1997) ("Defendants argue that this is not a 'debt' because they did not seek to collect any money, they only sought to enforce a security interest. But this argument only describes the characteristic of the defendants' collection activities, not the underlying obligation upon which defendants' acts were based."). Under the circumstances of this case, then, Forgeron's obligation can be considered a "debt" if it satisfies the other requirements of the statute.

2. "Primarily For Personal, Family, Or Household Purposes"

Avis and ARI say that Forgeron's FDCPA claim must fail for another reason: the obligation he incurred was not "primarily for personal, family, or household purposes" as required by the definition of "debt." Instead, Forgeron agreed to rent the car on Hough's

behalf because Hough had promised to make Forgeron a success in the music industry, making the alleged debt a business expense.

Forgeron responds that "nothing in the pleading indicates that Dr. Forgeron rented this vehicle for any non-personal reason, and nothing therein suggests that the rental vehicle was related to **anyone's** business"; Forgeron further argues that (1) he was employed as a chiropractor and did not rent the car in connection with his medical practice, and (2) he was only pursuing music "as a hobby," so the rental cannot be a business-related expense. If nothing else, Forgeron says that his claims must survive until the summary judgment phase of the proceedings. (*See* Pl.'s Resp. to ARI's Mot. to Dismiss, ECF No. 26, at 5-6; Pl.'s Resp. to Avis's Mot. to Dismiss, ECF No. 27, at 6-7.)

Forgeron is mistaken. There is plenty in the pleading to indicate that Forgeron rented the vehicle for a non-personal reason. While the court must draw all reasonable inferences in Forgeron's favor, the pages of allegations detailing the business nature of the relationship between Hough and Forgeron, coupled with the lack of facts that would support any other conclusion, make it unreasonable to infer that Forgeron rented the car for personal reasons.

The court evaluates the nature of the debt from the time it arises "rather than when it is to be collected." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000). Moreover, Forgeron need not earn his living as some type of professional musician to have the expenditure fall outside of the "primarily personal" category. *See, e.g.*, *id.* at 874. In *Miller*, for instance, the plaintiff initially purchased a property as his personal residence; years later, when he accepted a job elsewhere, he rented the property to strangers. *Id.* at 874. When he filed suit against

debt collectors attempting to collect outstanding mortgage debt, they argued that the FDCPA should not apply because they were attempting to collect a "business debt." Although the Seventh Circuit agreed that the plaintiff's later use was a "business use of the property," at the relevant time (*i.e.*, when the plaintiff signed the mortgage) the debt had been incurred for personal purposes. *Id.* at 875. In other words, the Seventh Circuit recognized that the later use of the property could be a "business use," even though there was nothing to indicate the plaintiff actually made a living as a landlord.

The Seventh Circuit's reasoning is equally applicable here. *See id.*; *see also Isaacson v. Saba Comm. Servs. Corp.*, 636 F. Supp. 2d 722, 725 (N.D. Ill. 2009) (dismissing FDCPA claim on summary judgment where plaintiff admitted that he rented a vehicle on behalf of a non-profit corporation). Regardless of the past nature of Forgeron's musical interests—in other words, "hobby" or not—at the time Forgeron rented the car for Hough, he was seeking to transform that hobby into a remunerative enterprise. That he did not succeed is irrelevant. The facts establish that Forgeron entered into a relationship with Hough whereby he paid Hough sums of money in exchange for Hough's assistance in establishing him in the music business, that Forgeron believed Hough needed the car in connection with Hough's music-related business, and that Hough paid Forgeron more than the amount Forgeron actually paid for the rental car so that Hough could use Forgeron's credit card.[3] Under Federal Rule of Civil Procedure

---

[3] Attached to Avis's Memorandum in Support, Avis included a signed copy of the credit card receipt for the rental car, showing that Forgeron's estimated rental charges were $459.08. "Generally, in deciding a motion to dismiss under Rule 12(b)(6), the court is limited to the four corners of the complaint." *DeJohn v. The TV Corp.*, 245 F. Supp. 2d 913, 916 (N.D. Ill. 2003). One narrow exception exists: if a document is (1) attached to the motion to dismiss, (2) referenced in the plaintiff's complaint, and (3) central to plaintiff's claim, that document may be considered part of the pleadings under Federal Rule of Civil Procedure 10(c). *McCready v. eBay, Inc.*, 453 F.3d 882, 891-92 (7th Cir.

8(a), "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Forgeron's insistence that he rented the vehicle for personal purposes is simply not plausible in light of the facts he pleaded. Because Forgeron's rental was not "primarily for personal, family, or household purposes," it is not a "debt" under the Act. As a result, Forgeron's FDCPA claims (Counts I and II) must be dismissed pursuant to Rule 12(b)(6) and the court need not address whether Avis or ARI are "debt collectors" under the FDCPA.

**B.     State Law Claims**

In addition to the FDCPA claims, Forgeron seeks recovery against ARI and Avis on a variety of state law grounds, including defamation *per se*, publication of private facts, and intentional infliction of emotional distress; moreover, although not at issue in these pleadings, the claims that Forgeron brought against Hough and DMI are entirely rooted in state law.[4] Having dismissed the only federal claims at issue, the court must now consider whether to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c). The court declines to do so.

"[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727-28 (7th Cir. 1998).

---

2006). Here, the rental agreement meets the standard set forth in *McCready*, and so the court has considered the agreement where relevant.

[4]     If the court were to retain jurisdiction over these supplemental claims, the court *sua sponte* would have severed the claims against Hough and DMI from those against Avis and ARI under Federal Rule of Civil Procedure 21. These sets of claims are entirely "discrete and separate" and, while technically arising from the same series of transactions, are more than capable of independent resolution. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006).

Thus, only in "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity"—will the court depart from that general rule and decide state-law claims on the merits. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

No such unusual circumstances are present in this case. This case is still in its early stages, and neither the court nor the parties have expended substantial resources. There will be no great duplication of effort should Forgeron choose to refile in state court. *See Wright*, 29 F.3d at 1251 ("Another occasion for retaining state-law claims occurs when 'substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort.'"). Nor will there be any unfairness to the parties, as although the statute of limitations has run on certain of Forgeron's state law claims, Illinois law permits Forgeron to refile his suit within a year of the dismissal without prejudice. *See* 735 Ill. Comp. Stat. 5/13-217; *Phillips v. Allen*, 743 F. Supp. 2d 931, 953 n.15 (N.D. Ill. 2010) (noting that the unfairness concern was not present "because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court"); *see also Duckworth v. Franzen*, 780 F.2d 645, 656-57 (7th Cir. 1985) (abrogated on other grounds) (same).

The court might also choose to exercise supplemental jurisdiction where "it is absolutely clear how the pendent claims can be decided" or where the remaining claims are "patently frivolous." *Wright*, 29 F.3d at 1251. Here, the court's ruling on the FDCPA claims has no impact on and provides no insight into the ultimate resolution of the remaining issues, nor does the court find that Forgeron's claims are frivolous based

on the pleadings. In sum, at this early point in litigation, the court finds that no good reason exists to exercise supplemental jurisdiction. The state-law claims are dismissed without prejudice.

### III. CONCLUSION

For reasons stated above, Forgeron's FDCPA claims against Avis and ARI (Counts I and II) are dismissed with prejudice under Rule 12(b)(6); all of the remaining claims (Counts III through XI) are dismissed without prejudice.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 26, 2011